UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
c/o United States Attorney's Office   )          Civil Action No.
555 Fourth St., N.W.               )
Washington, D.C.    20530          )
                                   )
                    Plaintiff,     )
                                   )
          v.                       )
                                   )
$109,074.91 IN U.S. CURRENCY SEIZED ON   )
OR ABOUT AUGUST 2, 2013, FROM      )
SERVICE CREDIT UNION'S GENERAL     )
LEDGER, ABA 211489656,             )
                                   )
and                                )
                                   )
$595,656.06 IN U.S. CURRENCY SEIZED ON   )
OR ABOUT APRIL 20, 2012 FROM SERVICE   )
CREDIT UNION ACCOUNT NO. 3766-4418,   )
HELD IN THE NAME OF JONATHAN        )
HARGETT,                           )
                                   )
and                                )
                                   )
€33.380,24 IN EUROS FROZEN ON OR   )
ABOUT APRIL 5, 2012, FROM DEUTSCHE   )
BANK PRIVAT, ACCOUNT NO. 046097260,   )
And NO. 046097261, HELD IN THE NAME OF )
JONATHAN HARGETT,                  )
                                   )
and                                )
                                   )
€209.562,72 IN EUROS FROZEN ON OR  )
ABOUT APRIL 5, 2012, FROM NORRISBANK )
GmbH, ACCOUNT No. 4312471605-00, and   )
NO. 4312471605-10, HELD IN THE NAME OF )
JONATHAN HARGETT,                  )
                                   )
and                                )
                                   )

**€28.202,18 IN EUROS FROZEN ON OR** )
**ABOUT APRIL 5, 2012, FROM ING-DiBa AG** )
**ACCOUNT NO. 5401054510, and NO.** )
**5520263579, HELD IN THE NAME OF** )
**JONATHAN HARGETT,** )
)
**and** )
)
**€60.081,50 IN EUROS DEPOSITED INTO** )
**DARMSTADT COURT'S CASHIER,** )
**ACCOUNT NO. 0001006048, FROM SEIZED** )
**CHECK FOR PAYMENT OF A MERCEDES** )
**BENZ, PURCHASED BY JONATHAN** )
**HARGETT,** )
)
**and** )
)
**THREE (3) 1 KG SILVER BARS SEIZED ON** )
**OR ABOUT APRIL 4, 2012, FROM THE** )
**RESIDENCE OF JONATHAN HARGETT,** )
**DEPOSITED AT THE DEPOSITORY OF THE** )
**LOCAL COURT OF FRANKFURT ON MAIN,** )
**CASE FILE NO. 28 HL 57/12,** )
)
**and** )
)
**One (1) SMALL SILVER BAR, SEIZED ON** )
**OR ABOUT APRIL 4, 2012, FROM THE** )
**RESIDENCE OF JONATHAN HARGETT,** )
**DEPOSITED AT THE DEPOSITORY OF THE** )
**LOCAL COURT OF FRANKFURT ON MAIN,** )
**CASE FILE NO. 28 HL 57/12** )
)
**and** )
)
**TWO (2) 1 OZ GOLD BARS, SEIZED ON OR** )
**ABOUT APRIL 4, 2012, FROM THE** )
**RESIDENCE OF JONATHAN HARGETT,** )
**DEPOSITED AT THE DEPOSITORY OF THE** )
**LOCAL COURT OF FRANKFURT ON MAIN,** )
**CASE FILE NO. 28 HL 57/12** )
)
**and** )
)

**$3,100.00 IN U.S. CURRENCY, SEIZED ON**          )
**OR ABOUT APRIL 4, 2012, FROM THE**              )
**RESIDENCE OF JONATHAN HARGETT,**                )
**DEPOSITED AT THE DEPOSITORY OF THE**            )
**LOCAL COURT OF FRANKFURT ON MAIN,**             )
**CASE FILE NO. 28 HL 57/12**                     )
                                                  )
**and**                                           )
                                                  )
**€60.035,00 IN EUROS CURRENCY, SEIZED**          )
**ON OR ABOUT APRIL 4, 2012, FROM THE**           )
**RESIDENCE OF JONATHAN HARGETT,**                )
**DEPOSITED AT THE DEPOSITORY OF THE**            )
**LOCAL COURT OF FRANKFURT ON MAIN,**             )
**CASE FILE NO. 28 HL 56/12**                     )
                                                  )
                          **Defendants.**         )
_____   )

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff, the United States of America, by and through its attorney, the

United States Attorney for the District of Columbia, to bring this verified complaint in a civil

action *in rem* to condemn and forfeit the above-listed defendants ("defendant properties"), to the

use and benefit of the United States of America in accordance with Supplemental Rule G(2) of

the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the

"Supplemental Rules").   In support of its cause, plaintiff states as follows:

## NATURE OF THE ACTION AND DEFENDANT *IN REM*

1.       This is a civil action *in rem* for the forfeiture of the defendant properties to the use

and benefit of the plaintiff, the United States.   Pursuant to 18 U.S.C. § 981(a)(1)(C), property is

subject to forfeiture if it is, any property, constituting or derived from any proceeds obtained

directly or indirectly as a result of health care fraud, in violation of 18 U.S.C. § 1347, false

statements relating to a health care matter, in violation of 18 U.S.C. § 1035; or wire fraud, in violation of 18 U.S.C. § 1343, which are "specified unlawful activit[ies]" as defined by 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1).   Pursuant to 18 U.S.C. § 981(a)(1)(A), property is subject to forfeiture if it is, any property, real or personal, involved in money laundering, in violation of 18 U.S.C.§ 1957.

2.     The defendant properties are composed of three groups:   (a) a quantity of U.S. currency in the total amount of $704,730.97, which federal law enforcement agents seized on August 2, 2013, and April 20, 2012, after the execution of two seizure warrants at Service Credit Union ("U.S. defendant funds"); (b) funds seized or frozen by the German authorities from Jonathan Hargett's accounts, cash from his residence in Germany, and a check ("German defendant funds"); and (c) six precious metal bars seized by German authorities from Jonathan Hargett's residence and placed in the depository of the local court of Frankfurt on Main, Germany ("German defendant properties"). The defendant properties are more fully described as follows:

      **(a)   $595,656.06 in U.S. Currency seized by the government on or about April 20, 2012, from Service Credit Union account number 37660-4418, held in the name of Jonathan Hargett;**

      **(b)   $109,074.91 in U.S. Currency seized by the government on or about August 2, 2013, from Service Credit Union's general ledger, ABA 211489656;**

      **(c)   €33.380,24 in Euros frozen on or about April 5, 2012, from Deutsche Bank Private- und Gerchaeftskunden AG, Bismarckplatz 1, Account No. 046097260 and No. 046097261, held in the name of Jonathan Hargett;**

      **(d)   €209.562,72 in Euros frozen on or about April 5,2012, from Norrisbank GmbH, Bismarckplatz 1, 45128 Essen, Account No.**

4312471605-00 and No. 4312471605-10, held in the name of Jonathan Hargett;

(e) €28.202,18 in Euros frozen on or about April 5, 2012, from ING-DiBa AG, Theodor-Heuss-Allee, Frankfurt on Main 106, 60486, Account No. 5401054510, and No. 5520263579, held in the name of Jonathan Hargett;

(f) €60.081,50, in Euros deposited into Darmstadt Courts' Cashier, Landesbank hessen-Thueringen, Account No. 0001006048, credited on or about June 21, 2012, from seized check for payment of a Mercedes Benz purchased by Jonathan Hargett;

(g) Three (3) (1 KG) Silver Bars seized or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12;

(h) One (1) Small Silver Bar, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12;

(i) Two (2) (1 oz.) Gold Bars, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12;

(j) $3,100 in U.S. currency, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12; and

(k) €60.035,00 in Euros currency, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 56/12. One hundred and nine thousand seventy-four dollars and ninety-one cents ($109,074.91) in U.S. currency seized on August 2, 2013, from Service Credit Union's General Ledger, ABA 211489656;

The U.S. defendant funds are in the custody of United States Marshals Service and were placed in the Seized Asset Deposit Fund.   For purposes of record keeping, the defendant funds are identified as Asset I.D. No. 13-DCI-000232, and 12-DCI-000035, respectively.   The German

defendant funds and property are in the custody of the German authorities in Germany.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction of this civil action by virtue of 28 U.S.C.

§ 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C.

§ 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of

Congress.   Venue is proper in this District because this is a forfeiture action or proceeding by

virtue of 28 U.S.C. § 1355(b)(1), because this is a forfeiture action or proceeding brought in "the

district court for the district in which any of the acts or omissions giving rise to the forfeiture

occurred" and for $109,074.91 of the U.S. defendant funds, by virtue of 28 U.S.C. § 1395(b)(1),

because "a civil proceeding for the forfeiture of property may be prosecuted in the district in

which the property is found."   In this matter, there were acts giving rise to the forfeiture that

occurred in this district and $109,074.91 of the U.S. defendant funds is now, and during the

pendency of this action, has been in the jurisdiction of this Court.

4.     This civil action *in rem* for forfeiture is governed by 21 U.S.C. § 881, 18 U.S.C.

§ 983, the Federal Rules of Civil Procedure, and the Supplemental Rules, particularly Rule G.

## STATEMENT OF FACTS

### Relevant Health Care Benefit Programs

5.     The FEHBP was a health care benefit program funded by the federal government

that offered health care benefits, items, and services for federal employees, retirees, and their

eligible spouses and dependents.   The U.S. Office of Personnel Management ("OPM")

contracted with a number of private insurance companies to administer the FEHBP.   These

companies processed and paid health care claims on behalf of OPM.   OPM reimbursed the

contracted health insurance companies for 100% of the amount of the health care claims they paid and 100% of their administrative expenses, plus a negotiated service charge.   The funds to pay the companies were drawn from an OPM trust fund account at the United States Treasury. The trust fund account was funded primarily by the federal government, but approximately 27% of the fund was comprised of health insurance premiums paid by individual federal employees.

6.     Federal employees stationed overseas had the option to choose the Foreign Service Benefit Plan ("FSBP") as their health care benefit program.   FSBP was a "health care benefit program" as defined in 18 U.S.C. § 24(b).   OPM contracted with Coventry Health Care ("COVENTRY") in the District of Columbia to administer the FSBP.   Generally, employees stationed overseas and enrolled in FSBP paid out-of-pocket for their health care benefits, items, or services they received and then submitted claims for reimbursement to FSBP via facsimile or mail.   FSBP sent the claims to COVENTRY, which processed the claims and paid the employee directly, either with a check sent through the U.S. Postal Service or through electronic direct deposit to the employee's bank account.

7.     The U.S. Department of Veterans Affairs ("VA") also provided health care benefits, items, and services to certain U.S. veterans with qualifying service-connected conditions.   For veterans working or residing abroad, the VA provided this health care coverage through its Foreign Medical Program ("VA-FMP").   The VA-FMP was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

8.     Veterans eligible for VA-FMP coverage and in need of medical care overseas paid out-of-pocket for their health care benefits, items, and services and then submitted claims for

7

reimbursement to VA-FMP in Denver, Colorado, via facsimile or mail.   The VA-FMP reimbursed veterans using checks sent directly to them through the mail.

### Jonathan Hargett

9.      From 1996 through 2012, Jonathan Matthew Hargett ("Hargett") was a United States citizen working in various positions as a civilian employee for the Department of Defense ("DoD") in Germany.

10.      Most recently, from January 2011, through May 2012, Hargett was an Intelligence Analyst with Headquarters, U.S. Army Europe, Intelligence Surveillance and Reconnaissance Directorate, in Heidelberg, Germany.   Previously, Hargett had served in the U.S. Army from 1992 to 1996.

11.      On or about December 13, 2002, Hargett enrolled in the FSBP as a federal employee stationed overseas.   From on or about December 13, 2002, through on or about May 31, 2012, Hargett was enrolled in and submitted claims to the FSBP.

12.      Because of his service in the U. S. Army from 1992 to 1996, Hargett was also eligible for health care coverage from the VA.   Hargett applied for and obtained disability compensation with the VA in 1996, and on or about November 24, 2004, Hargett enrolled in the VA-FMP.   Hargett was enrolled in and submitted claims to the VA-FMP through at least April 2012.

13.      Hargett submitted most of his claims for reimbursement to the FSBP via wire transmissions in foreign commerce – specifically, facsimiles sent from a U.S. Government facsimile machine on a U.S. Army base in Germany to FSBP in Washington, D.C.

8

14.     Hargett submitted his claims for reimbursement to the VA-FMP via wire transmissions in foreign commerce – specifically, facsimiles sent from a U.S. Government facsimile machine on a U.S. Army Base in Germany to Colorado – and via foreign and interstate mail sent from Germany and delivered in Colorado by the United States Postal Service.

15.     The majority of claims for reimbursement that Hargett submitted to both the FSBP and the VA-FMP were regarding alleged medication or other medical items purchased from a pharmacy in Darmstadt Germany, Apotheke im Hauptbahnhof ("Apotheke"), and health care items and services provided by physician in Darmstadt, Germany, ("Dr. C"), either directly or through one of his clinics.

16.     On October 30, 2013, a federal grand jury sitting in the District Court for the District of Columbia returned an Indictment against Hargett in the case of *United States v. Jonathan M. Hargett*, Case No. 13-cr-295 (RLW).  Hargett was charged with one count of health care fraud, in violation of 18 U.S.C. §§ 1347, 2; four counts of false statements relating to health care matters, in violation of 18 U.S.C. § 1035; four counts of wire fraud, in violation of 18 U.S.C. § 1343; six counts of engaging in monetary transactions of property derived from specified unlawful activity.  The Indictment also notified Hargett of the criminal forfeiture allegations, and listed the defendant properties as forfeitable criminally.

### Hargett's Fraud Scheme

17.     On or about August 22, 2011, Hargett submitted via facsimile a claim for reimbursement to FSBP.  The claim submission included an alleged supporting invoice from Apotheke, a pharmacy in Darmstadt, Germany, purporting to show that Hargett had purchased €42.103,69 worth of drugs and pharmaceutical items on August 11, 2011.

18.     None of the individual items on the August 22, 2011 invoice had been dispensed by the Apotheke to Hargett.

19.     Soon thereafter the Apotheke received a U.S. Treasury check from VA-FMP in the amount of $47,790.73.   The check was payment for a claim submitted by Hargett and had mistakenly been mailed to the Apotheke instead of Hargett.

20.     On or about March 22, 2012, Hargett sent an email to the Apotheke, advising the pharmacy that they would be receiving the check, and requesting that they endorse the check and return it to him.

21.     On or about March 23, 2012, OPM-OIG and VA-OIG were notified of suspected fraudulent health care billings submitted by Hargett to FSBP.

22.     On April 4, 2012, the German police executed court-issued search warrants on Hargett's vehicle and residence.

23.     The search warrant executions were witnessed by agents from the U.S. Army Criminal Investigative Division ("CID) and Defense Criminal Investigative Service ("DCIS"). Among the items seized by the German authorities from Hargett's person, residence, and vehicle were:

   (a)     Four silver bars and two gold bars;
   (b)     €60.035,00 and $3,100.00 in cash; and
   (c)     Automobile sales contract for an Audi Q7 and a check in the amount of
            €79.831,93 made payable to Audi Zentrum Heidelberg.

24.     Effective July 13, 2012, Hargett's employment with DoD was terminated.

25.     From at least in or around January 10, 2007 through at least in or around February 2012, Hargett submitted to the U.S. Government, through FSBP and the VA-FMP health care

benefit programs, over 100 claims, totaling approximately €1.76 million (approximately US $2.5 million), for health care items or services that Hargett allegedly received and paid for.

26.     The vast majority of Hargett's claims for reimbursement to FSBP and the VA-FMP were false.

27.     Hargett created many of these false invoices on his government computer at the U.S. Army base in Heidelberg, Germany.

28.     In addition to the false medical claims (in the form of letters) submitted to FSBP and VA-FMP, Hargett also submitted false documentation that purported to be:   (1) invoices from the Apotheke and from Dr. C.; and (2) bank wire transfers purporting to show that Hargett had paid the provider by transferring money in the amount of the false invoice.

29.     Most of the false claims Hargett submitted to the government were transmitted by Hargett using the facsimile machine in his Department of Defense office on a U.S. Army base in Heidelberg, Germany.

30.     Hargett submitted a number of claims to both the FSBP and the VA-FMP, usually after one plan had already paid, thereby obtaining payment twice for the same false claim.

**False Pharmacy Claims**

31.     From on or about March 14, 2011, through on or about February 21, 2012, Hargett also submitted to FSBP five claims totaling approximately €162.803,67 (approximately $282,698.00), for pharmacy and health care items that Hargett claimed to have purchased from the Apotheke.

32.     From on or about April 13, 2010, through on or about February 3, 2012, Hargett submitted to VA-FMP approximately 29 claims totaling €947.302,30 (approximately

11

$1,342,689.00) for pharmacy and health care items Hargett allegedly purchased from the Apotheke.

33.     Most of the false Apotheke pharmacy claims submitted by Hargett to FSBP and VA-FMP were for the alleged purchase of six drugs:   Hyalubrix, Orthovisc, Ostensil, Synvisc, Viscorneal, and Xylonest.

34.     Xylonest is an injectable local anesthetic; the other five drugs are all variations of the same drug typically used to treat osteoarthritis of the knee.   The drugs are typically injected once a week, three to five times, in dosages of about 2 ml; that course of treatment lasts from six months to a year.

35.     The volumes of drugs allegedly purchased by Hargett from the Apotheke grossly exceeded the standard treatment amounts for those drugs.

36.     Hargett obtained approximately $1,303,325.65 in payments for his false pharmacy claims:   approximately $1,186,908.27 from the VA-FMP and approximately $116,418.38 from the FSBP.

37.     The most expensive drug or invoice actually billed by the Apotheke to Hargett and paid by Hargett was less than €292,00 (approximately $379.00).

38.     Apotheke only invoiced Hargett for a total of €2.124,56 (approximately $2,799.00).

### False Medical Claims

39.     From on or about January 10, 2007 through on or about February 22, 2012, Hargett submitted to the FSBP approximately 77 claims totaling approximately €600.550,65 (approximately $845,352.98) for medical benefits, items, and other services that Dr. C allegedly

12

provided directly or through one of his clinics to Hargett from December 15, 2006 through
January 27, 2012.   All of these claims were false.

40.      From in or around February 2009 through on or about February 3, 2012, Hargett
submitted to VA-FMP approximately 25 claims totaling approximately €58.758,39
(approximately $82,226.37) for medical services and items that Dr. C allegedly provided directly
or through one of his clinics to Hargett from January 27, 2009, through December 16, 2011.

41.      Most of Hargett's claims that he submitted to VA-FMP related to Dr. C's services
were false.

42.      Hargett obtained approximately $901,706.37 as payments for his false medical
claims:   approximately $74,604.29 from the VA-FMP and approximately $827,102.08 from the
FSBP.

### Hargett's U.S. Government Computer

43.      A search and analysis was conducted of Hargett's U.S. Government computer and
shared drive from Hargett's office at the U.S. Army base in Germany, pursuant to a Military
Magistrate's Search Authorization issued on April 4, 2012.

44.      On March 20, 2013, the forensic analysis of Hargett's government computer was
conducted. That analysis uncovered evidence of numerous files and emails relating to claims for
the Apotheke and Dr. C and submitted to FSBP and VA-FMP; however, most of the documents
had been deleted.

45.      One of the documents that forensic analysis was able to recover was a Microsoft
Word document created on Hargett's computer that purported to be an invoice from the
Apotheke, dated February 7, 2011, for drugs including Hyalubrix, Orthovisc, Ostensil, Synvisc,

13

and Xylonest, totaling €35.381,09.   On June 27, 2011, Hargett submitted to the VA-FMP via

facsimile as part of his claim an invoice purportedly from the Apotheke, dated February 7, 2011,

for €39.518,82.   The VA-FMP paid Hargett $53,274.67 for that claim, which was false.

46.     Among the items recovered from that U.S. Government computer hard drive were

a number of Microsoft Word documents that list Hargett (or the U.S. Army) as the

author/creator, purporting to be invoices from the Apotheke and Dr. C.   For example, there were

at least 34 alleged Apotheke invoices and at least 25 alleged Dr. C invoices.

47.     These alleged invoices match of some of the invoices that Hargett submitted to

VA-FMP and FSBP that were confirmed to be false.

48.     Also recovered from Hargett's government computer's shared drive was a

Microsoft Excel spreadsheet of claims.   The spreadsheet detailed claims by the provider

(Apotheke or Dr. C), the alleged dates of service, the amounts claimed on Hargett's submissions

to the VA-FMP and/or FSBP, the dates the claims were submitted, and the dates and amounts the

claims were paid by the U.S. Government.

### Hargett's Confession

49.     On June 19, 2012, Hargett gave a consensual interview to the local German

police.   An investigator from DCIS was also present for the interview.

50.     Hargett's attorney was present for the interview.   Before the interview began,

Hargett was advised of his rights under German law.

51.     Hargett was offered, but waived the services of an interpreter, so the interview

was conducted in German

52.     Hargett speaks German fluently.

53.    During the interview, Hargett admitted to having submitted false claims and forged invoices and bank transfer records to FSBP and the VA-FMP.

54.    Hargett stated that he submitted the false claims to FSBP because he did not want his children to grow up in poverty.

55.    Hargett also stated that he submitted the false claims to the VA-FMP because he was building a house that cost €200.000,00, but the construction had run into problems, and those problems could cost an additional €250.000,00.

56.    During the interview, Hargett was shown a number of the false claims he submitted to FSBP and VA-FMP as well as some of the supporting invoices and bank transfers he forged.

57.    Of the documents he was shown, Hargett admitted that at least 55 of the claims he submitted for items allegedly provided by the Apotheke and 45 of the 46 he submitted for services allegedly provided by Dr. C were completely false.

58.    In addition, Hargett admitted that he created some of the false invoices on his U.S. Government computer at the U.S. Army barracks in Heidelberg.

59.    During the interview, Hargett was also asked if he was willing to forfeit his rights to the property seized in the searches.   He responded, stating that he renounced possession of the confiscated assets and agreed that they may be returned to the injured parties.

60.    On June 21, 2012, Hargett appeared with his attorney in the District Court in Darmstadt and was again advised of his rights under German law.   Hargett repeated his confession of two days earlier, June 19, 2012, and admitted that he had fraudulently obtained at least $1.5 million from the United States Government through his fraud scheme.

**Funds from SCU Accounts**

61.     Service Credit Union is a credit union based in Portsmouth, New Hampshire, but has branches on U.S. military installations in Germany.

62.     Hargett directed most, if not all, of his fraudulently obtained reimbursements from FSBP and VA-FMP, to be initially deposited into Hargett's SCU account, Account No. 3766-4418.  For example, between January 2012 and April 3, 2012, Hargett's SCU account received fraudulently obtained deposits totaling over $500,000 from the U.S. Treasury.  During that three-month time period, Hargett's SCU account balance was maintained at over $10,000 on any given day.  In March 2012, Hargett's SCU account no. 3766-4418, had a balance of over $760,000.

63.     In addition to fraudulently obtained funds from the VA-FMP, Hargett received approximately $971,540.15 in fraudulently obtained reimbursements from COVENTRY on behalf of OPM-FSBP, which were initially deposited into Hargett's SCU Account No. 3766-4418.

64.     On April 12, 2012, the United States obtained a seizure warrant from the U.S. District Court for the District of Colorado and served that warrant on SCU.  *See In the Matter of the Seizure of All Fund in Account Number 3766-4418 Held in the Name of Jonathan Hargett, as Service Credit Union, 2032 Lafayette Road in Portsmouth, NH*, Misc. Case No. 12-MC-0057. That seizure warrant was based upon Hargett's false submissions for reimbursement from the VA-FMP.  On or about April 20, 2012, after being served with the seizure warrant, SCU provided the United States with a check for $595,656.06, which represented the funds remaining on deposit in Hargett's SCU Account No. 3766-4418.

16

## **Money Laundering**

65.    After the fraudulently obtained funds from the false claims were deposited into

Hargett's SCU account, he then transferred or withdrew hundreds of thousands of dollars,

including more than €310.000 (approximately $403,000) to accounts held in his wife's name in

Germany.   For example, Hargett made the following cash withdrawals and transfers from his

SCU account:

| Date | Amount (EUR) | Approx. USD | Transfer To |
|------|--------------|-------------|-------------|
| 1/22/2009 | €30.000 | $39,735 | NorrisBank account |
| 2/3/2009 | €37.500 | $49,173 | ING Bank account |
| 8/1/2011 | €65.000 | $95,672 | NorisBank account |
| 9/6/2011 | €20.000 | $29,235 | PostBank account |
| 9/7/2011 | €20.000 | $29,065 | PostBank account |
| 9/13/2011 | €55.000 | $77,128 | NorisBank account |
| 9/21/2011 | €10.000 | $13,816 | withdrawal |
| 9/23/2011 | €62.750 | $86,695 | NorisBank account |
| 9/27/2011 | €27.500 | $37,994 | withdrawal |
| 12/13/2011 | €35.000 | $48,356 | withdrawal |
| 3/8/2012 | €70.250 | $94,600 | NorisBank account |

66.    In addition, there is reason to believe that Hargett knowingly engaged in other

monetary transactions, affecting interstate or foreign commerce, in criminally derived property of

a value greater than $10,000, by transferring funds from his SCU account to make a number of

purchases or attempted purchases.   For example, Hargett initiated the following transactions using funds from his SCU savings account:

| DATE | APPROXIMATE USD $ | PURCHASE |
|---|---|---|
| 2/01/2012 | $37,424.96 | Fireplace |
| 3/22/2012 | $81,184.24 | Mercedes Benz |
| 4/03/2012 | $109,074.91 | Audi |

**German Asset Seizure and Audi Check**

67.   Subsequent to Hargett's arrest, the German court ordered an *in rem* attachment against Hargett's assets in the amount of €1.049.695,81.   Pursuant to that order, the following assets were provisionally seized or frozen and are under the control of the German authorities.

| AMOUNT IN EUROS | APPROXIMATE AMOUNT IN USD$[1] | SEIZED OR FROZEN FROM |
|---|---|---|
| €33.380,24 | $44,316.94* | Deutsche Bank |
| €209.562,72 | $278,221.75* | Norisbank |
| €28.202,18 | $37,442.06* | ING-DiBa |
| €60.081,50 | $79,766.32* | Funds used to pay Mercedes Benz |
| €60.035,00 | $79,702.73* | Cash in Euros seized from Hargett's Residence |
| €79.831,93 | $109,074.91 | Check made payable to Audi; |
| n/a | $3,100.00 | Cash in USD seized From Hargett's residence |
| Three (3) 1 KG silver bars | Unknown | Seized from Hargett's residence |

[1] Euro to dollar conversions marked with an asterisk were made using the exchange rates in effect on July 25, 2013.

18

| One (1) small silver bar | Unknown | Seized from Hargett's residence |
|---|---|---|
| Two (2) gold bars, 1 ounce each | Unknown | Seized from Hargett's residence |

68.     The funds and property listed above have been frozen or seized by German authorities totaling approximately $551,922 – approximately one quarter of the amount Hargett fraudulently obtained from the United States.

### Funds from Audi Check

69.     When SCU account holders on U.S. military bases overseas need a local check made out in euros, SCU withdraws the funds in dollars from the account holder's account, and through SCU's relationship with Bank of America, converts the dollars into Euros and issues a Bank of America Military Bank check, in Euros.   That is how Hargett obtained the Audi check.

70.     On April 3, 2012, SCU withdrew $109,074.91 from Hargett's SCU account, and Bank of America converted the money to Euros, issuing a check for €79.831,93, made payable to Audi Zentrum Heidelberg.   That check was seized from Hargett by German authorities when they arrested Hargett on April 4, 2012.   Because the check has been in the German government's possession, it was never cashed.

71.     Hargett's SCU account was closed sometime after SCU received the seizure warrant.   The $109,074.91 from the check has been on SCU's general ledger account until the government obtained a seizure warrant from a Magistrate Judge in the District Court for the District of Columbia, *In the Matter of the Seizure of $109,074.91 in U.S. Currency From a*

*Check, Currently Held in the General Ledger at Service Credit Union, ABA 211489656*, Case No. 13-mj-609, which was served on SCU on August 2, 2013.

## COUNT I

72.     All statements and averments made in paragraphs 1-71 are re-alleged and incorporated, herein, by reference.

73.     As described above, the defendant property constitutes or is derived from proceeds traceable to health care fraud, in violation of 18 U.S.C. § 1347.

74.     By reason of the above-described facts, the defendant property is subject to forfeiture to the United States pursuant to the provisions of Title 18, U.S.C. § 981(a)(1)(C).

## COUNT II

75.     All statements and averments made in paragraphs 1-71 are re-alleged and incorporated, herein, by reference.

76.     As described above, the defendant properties constitute or are derived from gross proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

77.     By reason of the above-described facts, the defendant properties are subject to forfeiture to the United States pursuant to the provisions of Title 18, U.S.C. § 981(a)(1)(C).

## COUNT III

78.     All statements and averments made in paragraphs 1-71 are re-alleged and incorporated, herein, by reference.

79.     The following defendant properties are subject to forfeiture because they are any property, real or personal, involved in a transaction or attempted transaction in violation of sections 1956 or 1957 of Title 18, or any property traceable to such property.

(a)  $109,074.91 in U.S. Currency seized by the government on or about August 2, 2013, from Service Credit Union's general ledger, ABA 211489656;

(b)  €33.380,24 in Euros frozen on or about April 5, 2012, from Deutsche Bank Private- und Gerchaeftskunden AG, Bismarckplatz 1, Account No. 046097260 and No. 046097261, held in the name of Jonathan Hargett;

(c)  €209.562,72 in Euros frozen on or about April 5,2012, from Norrisbank GmbH, Bismarckplatz 1, 45128 Essen, Account No. 4312471605-00 and No. 4312471605-10, held in the name of Jonathan Hargett;

(d)  €28.202,18 in Euros frozen on or about April 5, 2012, from ING-DiBa AG, Theodor-Heuss-Allee, Frankfurt on Main 106, 60486, Account No. 5401054510, and No. 5520263579, held in the name of Jonathan Hargett;

(e)  €60.081,50, in Euros deposited into Darmstadt Courts' Cashier, Landesbank hessen-Thueringen, Account No. 0001006048, credited on or about June 21, 2012, from seized check for payment of a Mercedes Benz purchased by Jonathan Hargett;

(f) Three (3) (1 KG) Silver Bars seized or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12;

(g) One (1) Small Silver Bar, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12;

(h) Two (2) (1 oz.) Gold Bars, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12;

(i)  $3,100 in U.S. currency, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 57/12; and

(j)  €60,035.00 in Euros currency, seized on or about April 4, 2012, from the residence of Jonathan Hargett, deposited at the depository of the Local Court of Frankfurt on Main, Case File No. 28 HL 56/12.

**One hundred and nine thousand seventy-four dollars and ninety-one cents ($109,074.91) in U.S. currency seized on August 2, 2013, from Service Credit Union's General Ledger, ABA 211489656;**

80.   As such, the defendant properties were involved in a money laundering transactions, in violation of 18 U.S.C. § 1957, and are, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the plaintiff prays that, as to the above-referenced defendant properties, due process issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and defendant properties be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

_____
RONALD C. MACHEN JR
UNITED STATES ATTORNEY
District of Columbia Bar No. 447889

_____
ARVIND K. LAL
Assistant United States Attorney
District of Columbia Bar No. 389496
Chief, Asset Forfeiture and Money Laundering Section

_____
DIANE G. LUCAS,
Assistant United States Attorney
District of Columbia Bar No. 443610
Asset Forfeiture and Money Laundering Section
555 4th St., N.W., Room 4822
Washington, D.C. 20530
(202) 252-7724
Diane.Lucas@usdoj.gov

22

## VERIFICATION

I, Special Agent Robert Petrole, a Special Agent with the U.S. Department of Defense, Office of Inspector General, Defense Criminal Investigative Service, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me or furnished to me by law enforcement agents and that everything contained in this Complaint is true and correct.

Executed on this 30th day of December, 2013.

_____
Special Agent Robert Petrole
U.S. Department of Defense
Office of Inspector General
Defense Criminal Investigative Service

23